IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| MANUEL GONZALEZ CORTEZ, | : | Case No. 1:25-cv-822 |
| | : | |
| Petitioner, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| ROBERT LYNCH, et al., | : | |
| | : | |
| Respondents. | : | |

## ORDER AND OPINION

This matter is before the Court on Petitioner Manuel Gonzalez Cortez's Petition

for Writ of Habeas Corpus (Doc. 1). Respondent Richard K. Jones, Butler County Sheriff,

filed a Motion to Dismiss for Failure to State a Claim (Doc. 12), to which Petitioner did

not respond. Federal Respondents filed a Return of Writ (Doc. 16), to which Petitioner

filed a Reply in Support (Doc. 18). This matter is therefore ripe for the Court's review.

For the reasons explained below, Petitioner's Petition (Doc. 1) is **DISMISSED**

**WITHOUT PREJUDICE**, and Respondent Richard K. Jones' Motion to Dismiss for

Failure to State a Claim (Doc. 12) is **DENIED AS MOOT**.

### FACTS AS ALLEGED

Petitioner Manuel Gonzalez Cortez is a citizen of Mexico who has resided in the

United States since 2006. (Petition, Doc. 1, ¶¶ 15, 41.) He entered the country without

inspection through Arizona, and did not enter through a port of entry. (Record of

Deportable/Inadmissible Alien, Doc. 14-1, Pg. ID 104.) Until his detention, Petitioner

worked in the construction industry and lived in Columbus, Ohio, with his wife, who is a lawful permanent resident, and their son, who is a United States citizen. (Petition, Doc. 1, ¶¶ 41, 44.) Additionally, Petitioner's wife has filed an immigrant visa petition on his behalf, which is pending before the U.S. Citizenship and Immigration Services ("USCIS"). (*Id.* at ¶ 44; *see also* USCIS Receipt for I-130, Ex. F, Doc. 1-7.)

On October 24, 2025, Petitioner was arrested and detained by U.S. Immigration and Customs Enforcement ("ICE") following a traffic stop of his vehicle on his way to work. (Petition, Doc. 1, ¶ 42.) The U.S. Department of Homeland Security ("DHS") placed Petitioner in removal proceedings before the Cleveland Immigration Court; ICE charged Petitioner with entering the country without inspection and thus being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i). (*Id.* at ¶ 43.) Following his arrest, ICE issued a custody determination to continue Petitioner's detention without a bond hearing. (*Id.* at ¶ 45.) He remains in ICE's custody today at the Butler County Jail in Butler County, Ohio. (*Id.* at ¶ 42.)

Petitioner had two previous encounters with law enforcement prior to this instant arrest. On February 2, 2022, he was convicted in Franklin County Municipal Court of Operating a Motor Vehicle without a Valid License, a first-degree misdemeanor. (Record of Deportable/Inadmissible Alien, Doc. 4-1, Pg. ID 104.) And, on April 11, 2023, Petitioner was convicted in Franklin County Municipal Court of Operating a Vehicle under the Influence of Alcohol or Drugs ("OVI"), a first-degree misdemeanor. (*Id.*) Petitioner did not serve a sentence of incarceration for the first conviction, and served a three-day sentence for the second. (*Id.*)

## PROCEDURAL POSTURE

On November 12, 2025, Petitioner filed a Petition for Writ of Habeas Corpus (Doc. 1) against the following Respondents in their official capacities: Robert Lynch, Field Office Director of Enforcement and Removal Operations, Detroit Field Office, Immigration and Customs Enforcement; Kristi Noem, Secretary of the U.S. DHS; Todd Lyons, Acting Director of U.S. ICE; Pamela Bondi, Attorney General of the United States; and Richard K. Jones, Warden of Butler County Jail. The Court clarifies that, while Petitioner originally brought claims against Robert Lynch, Respondents noted that Kevin Raycraft is now the acting Field Office Director of Enforcement and Removal Operations in the Detroit Field Office. (Return of Writ, Doc. 16, n.1.) Furthermore, while the Petition names Richard K. Jones as the Warden at Butler County Jail, Respondent Jones indicated that he is the Sheriff of Butler County. (Motion to Dismiss, Doc. 12, Pg. ID 66.) The Petition also describes him as the Sheriff. (Petition, Doc. 1, ¶ 20.)

Petitioner brings three claims: (1) violation of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(a); (2) violation of bond regulations under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), 62 Fed. Reg. 10312, 10323; and (3) violation of the Due Process Clause of the Fifth Amendment. (Petition, Doc. 1.) After filing this Petition, Petitioner requested a custody redetermination within the immigration court system. (*See* Order of the Immigration Judge, Doc. 16-2, Pg. ID 147.) On November 26, 2025, the Cleveland Immigration Court denied redetermination of Petitioner's custody, stating that the court does not have authority to redetermine bond in the case, pursuant to *Matter of Yajure Hurtado,* 29 I&N

3

Dec. 216 (BIA 2025). (*Id.*) The court noted, though, that in the alternative, it would deny

bond because Petitioner's past OVI conviction and his illegal status make him a flight risk

and danger to the community. (*Id.*) Petitioner reserved the right to appeal the Order. (*Id.*)

However, the time to appeal has passed, and the record shows no indication that

Petitioner has appealed the Order. (*Id.*)

## LAW & ANALYSIS

### I.     Subject Matter Jurisdiction

The fundamental question of subject matter jurisdiction must precede any analysis

of the merits on this matter. As federal courts are "courts of limited jurisdiction" and

"possess only that power authorized by Constitution and statute," they "have an

independent obligation to determine whether subject-matter jurisdiction exists."

*Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994); *Arbaugh v. Y&H Corp.*,

546 U.S. 500, 514 (2006).

Petitioner asserts that this Court possesses jurisdiction to hear this matter because

it involves: (1) habeas review (28 U.S.C. § 2241), (2) federal question jurisdiction (28 U.S.C.

§ 1331), (3) the Suspension Clause (U.S. Const. art. I, § 9, cl. 2), (4) the Declaratory

Judgment Act (28 U.S.C. § 2201), and (5) the All Writs Act (28 U.S.C. § 1651). (Petition,

Doc. 1, ¶¶ 8-10.) Respondents, in turn, contend that several statutory provisions divest

this Court of jurisdiction over Petitioner's claims. (*See* Return of Writ, Doc. 16, Pg. ID 114.)

4

To begin, in enacting 8 U.S.C. § 1252(g) through the REAL ID Act, Congress limited

the jurisdiction of federal courts as follows:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). "In the REAL ID Act, Congress decided that, as a matter of public

policy, [federal courts] do not have jurisdiction to decide claims that arise from the

decision of the Executive Branch to execute a removal order." *Rranxburgaj v. Wolf*, 825 F.

App'x 278, 283 (6th Cir. 2020). This holds true "whether or not [federal courts] agree with

ICE's decision to execute [a petitioner's] removal order." *Id.* Similarly, given § 1252(g)'s

language as to commencing proceedings and adjudicating cases, this jurisdictional bar

also extends to situations in which a petitioner is notified that he or she must "voluntarily

depart or face deportation." *Ene v. Phillips*, 99 F. App'x 642, 643 (6th Cir. 2004).

The plain language of 8 U.S.C. § 1252(g) therefore limits jurisdiction as it relates to

claims arising from the commencement of removal proceedings, adjudication of such

cases, or the execution of removal orders—even when jurisdiction would otherwise be

proper under federal question jurisdiction, mandamus jurisdiction, or "any other

provision of law." *See Elgharib v. Napolitano*, 600 F.3d 597, 607 (6th Cir. 2010); *see also Karki,*

*et al. v. Jones, et al.*, No. 25-CV-281, 2025 WL 1638070, at *7 (S.D. Ohio June 9, 2025). By its

terms, this statutory limitation also applies to habeas relief under 28 U.S.C. § 2241, which

would typically provide jurisdiction over cases where an alien is held in custody in

5

violation of the Constitution or the laws of the United States. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). That said, certain applications of § 1252(g) may potentially cause tension with the Suspension Clause. As the Framers enshrined in the Constitution: "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2. In order to successfully contest the constitutionality of this statute on Suspension Clause grounds, two things must be true: (1) the petitioner must be seeking "core" habeas relief; and (2) there is no adequate substitute to effectively test petitioner's detention. *Hamama v. Adducci*, 912 F.3d 869, 875–76 (6th Cir. 2018).

In approaching this jurisdictional question, the Court notes that Petitioner's claims do not seek relief from removal or even a redetermination of his admissibility. (*See* Petition, Doc. 1, ¶¶ 48-58.) At bottom, his claims solely challenge his detention without a bond hearing in violation of his Fifth Amendment rights, the INA, and the IIRIRA. (*Id.*; *see also* Pg. ID 12-13.) The Court finds that these claims sound in core habeas relief and do not fall within the scope of § 1252(g). In *Hamama*, the Sixth Circuit confirmed that the "district court's jurisdiction over the detention-based claims [was] independent of its jurisdiction over the removal-based claims." *Hamama*, 912 F.3d at 877; *see also Moussa v. Jenifer*, 389 F.3d 550, 554 (6th Cir. 2004); *Zadvydas v. Davis*, 533 U.S. 678 (2001). Indeed, "[f]or over 100 years, habeas corpus has been recognized as the vehicle through which noncitizens may challenge the fact of their detention." *Malam v. Adducci*, 452 F. Supp. 3d 643, 649 (E.D. Mich. 2020) (citing *Chin Yow v. U.S.*, 208 U.S. 8, 13 (1908)). Here, Petitioner argues that his detention without a bond hearing is unlawful; in other words, he

6

challenges the fact of his detention, independent from his removal. Accordingly, § 1252(g) does not inhibit this Court from reviewing such detention-based claims. *See, e.g., Zhen v. Doe*, No. 3:25-CV-1507, 2025 WL 2258586, at *2–4 (N.D. Ohio Aug. 7, 2025); *Resendiz v. Noem*, No. 4:25-CV-159, 2025 WL 3527284, at *2 (W.D. Ky. Dec. 9, 2025).

Nevertheless, Respondents cite a few other statutory provisions to make the argument that the Court lacks jurisdiction. (Return of Writ, Doc. 16, Pg. ID 114-19.) Respondents point to 8 U.S.C. § 1252(a)(5) and (b)(9), which state "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken . . . to remove an alien from the United States" is exclusively funneled to the Courts of Appeals. 8 U.S.C. § 1252(b)(9), (a)(5). According to Respondents, because Petitioner challenges the "decision and action to detain him, which arises from DHS's decision to commence removal proceedings," §§ 1252(b)(9) and (a)(5) divest this Court of jurisdiction. (Return of Writ, Doc. 16, Pg. ID 118 (citing *Jennings v. Gonzalez*, 583 U.S. 281, 294-95 (2018)).)

However, the Court finds this argument unavailing. In *Jennings v. Gonzalez*, the Supreme Court rejected an "expansive interpretation of § 1252(b)(9)" and determined that "questions of law" as to whether "certain statutory provisions require detention without a bond hearing" do not "arise from" the decision to remove an alien. 583 U.S. 281, 292–94 (2018). Here, since Petitioner's claims squarely contest his detention under 8 U.S.C. § 1225 and whether he is entitled to a bond hearing, § 1252(b)(9), even taken together with § 1252(a)(5), is no bar to this Court's jurisdiction. *See, e.g., Ramirez v. Lewis, et al.*, No. 4:25-CV-143, 2025 WL 3553676, at *2 (W.D. Ky. Dec. 11, 2025) (citing *DHS v.*

7

*Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020)); *Guerra v. Noem*, No. 1:25-CV-1341, 2025

WL 3204289, at *4 (W.D. Mich. Nov. 17, 2025); *Alonso v. Tindall*, No. 3:25-CV-652, 2025 WL

3083920, at *2 n.5 (W.D. Ky. Nov. 4, 2025).

Next, Respondents' invocation of 8 U.S.C. § 1252(e)(3) is similarly unconvincing.

(Return of Writ, Doc. 16, Pg. ID 114-15.) This provision—entitled as "Challenges on

Validity of the System"—provides:

> Judicial review of determinations under section 1225(b) of this title and its
> implementation is available in an action instituted in the United States
> District Court for the District of Columbia, but shall be limited to
> determinations of—
>
> (i)     whether such section, or any regulation issued to implement such
>         section, is constitutional; or
>
> (ii)    whether such a regulation, or a written policy directive, written
>         policy guideline, or written procedure issued by or under the
>         authority of the Attorney General to implement such section, is not
>         consistent with applicable provisions of this subchapter or is
>         otherwise in violation of law.

8 U.S.C. § 1252(e)(3)(A). Rather than "challenging the validity of the statutory scheme

itself" or a written policy, Petitioner is challenging "the lawfulness of his detention

without a bond hearing" because—as Petitioner sees it—the mandatory detention statute

simply does not apply to him. *Rivero v. Noem, et al.*, No. 1:25-CV-1294, 2025 WL 3438303,

at *2 (W.D. Mich. Dec. 1, 2025). Therefore, § 1252(e)(3) does not preclude jurisdiction. *See,*

*e.g., id.; Ardon-Quiroz v. Assistant Field Director*, No. 25-CV-25290, 2025 WL 3451645, at *3

(S.D. Fla. Dec. 1, 2025) (collecting cases for proposition that § 1252(e)(3) does not deprive

federal courts of jurisdiction in such situations).

Thus, for all these reasons, Respondents' jurisdictional arguments concerning Petitioner's claims do not persuade. *See Bartolon v. Bondi*, No. 1:25-CV-747, ___ F. Supp. 3d ___, 2025 WL 3674604, at *5-6 (S.D. Ohio Dec. 18, 2025) (similarly walking through why §§ 1252(g), 1252(b)(9), and 1252(e)(3) do not divest jurisdiction as to analogous claims); *Coronado v. Sec'y, Dep't of Homeland Sec., et al.*, No. 1:25-CV-831, ___ F. Supp. 3d ___, 2025 WL 3628229, at *3–6 (S.D. Ohio Dec. 15, 2025) (finding the same). Accordingly, Petitioner's claims shall proceed, and the Court will now address the substance of these claims.

## II.    Merits of Petitioner's Claims

28 U.S.C. § 2243 requires a court to issue a writ or order the respondent to show cause as to why a writ should not issue "unless it appears from the application that the applicant or person detained is not entitled" to a writ of habeas corpus. The statute also "requires an initial screening of a petition" in which "a court accepts as true the allegations in the petition and construes them in favor of the petitioner." *Espinoza v. Dir. of Detroit Field Off., U.S. Immigr. & Customs Enf't*, No. 4:25-CV-2107, 2025 WL 2878173, at *2 (N.D. Ohio Oct. 9, 2025) (citing *Alexander v. Northern Bureau of Prisons*, 419 F. App'x 544, 545 (6th Cir. 2011)). "If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court," then the court must dismiss the petition. Rule 4, Rules Governing Section 2254 Cases (applicable to petitions arising under § 2241).

The Court turns to the preliminary question of exhaustion. The well-established doctrine of exhaustion of administrative remedies instructs that "no one is entitled to

9

judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *McKart v. United States*, 395 U.S. 185, 193 (1969) (quotation omitted). Exhaustion serves several commendable goals: promoting judicial efficiency, allowing agencies to weigh in on the question as designed through the statutory or regulatory regime, providing an opportunity for self-correction, and producing a useful record. *Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013); *Wheeler v. Williams*, No. 20-4037, 2021 WL 6071501, at *2 (6th Cir. Dec. 20, 2021). Specifically, exhaustion often takes one of three forms: statutory exhaustion, regulation-based exhaustion, or—as in "most contexts"—prudential exhaustion. *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 746–47 (6th Cir. 2019); *Perkovic v. INS*, 33 F.3d 615, 619 (6th Cir. 1994). While statutory exhaustion may be understood as a mandate because the need to exhaust is explicitly spelled out by statute, "sound judicial discretion" otherwise governs when courts decide whether to apply prudential exhaustion. *Shearson*, 725 F.3d at 593 (quotation omitted); *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). "[C]ongressional intent and any applicable statutory scheme" inform judicial discretion on this point. *Id.* at 593–94 (quotation omitted).

No relevant statute commands administrative exhaustion within this context, so the Court's inquiry focuses upon prudential exhaustion. *See Hernandez Capote v. Sec'y of U.S. Dep't of Homeland Sec.*, No. 25-CV-13128, 2025 WL 3089756, at *3 (E.D. Mich. Nov. 5, 2025). As sister district courts have widely recognized while recently wrestling with cases like this one, "[t]he Sixth Circuit has not decided whether courts should impose administrative exhaustion in the context of a noncitizen's habeas petition for unlawful mandatory detention." *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425, at *3

10

(E.D. Mich. Sept. 9, 2025) (collecting cases). And, while the Sixth Circuit "has not formally adopted a standard for determining when prudential exhaustion applies" in such situations, the Ninth Circuit has promulgated a relevant test. *Lopez-Campos v. Raycraft*, No. 2:25-CV-12486, 2025 WL 2496379, at *4 (E.D. Mich. Aug. 29, 2025). Under this test, exhaustion may be required when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007). If prudential exhaustion is appropriate under this test and a petitioner does not exhaust all administrative remedies, a district court should generally either dismiss the petition without prejudice or stay the proceedings until the petitioner exhausts all remedies. *Espinosa*, 2025 WL 2878173, at *2 (citing *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011)).

The Sixth Circuit has cited to the Ninth Circuit's approach in the context of challenging bond determinations by immigration courts, albeit in a brief, unpublished order. *See Rabi v. Sessions*, No. 18-3249, 2018 U.S. App. LEXIS 19661, at *1 (6th Cir. July 16, 2018) (citing *Leonardo*, 646 F.3d at 1160). Additionally, several other district courts throughout the Sixth Circuit have addressed this issue by applying the Ninth Circuit's test. *See, e.g., Mendoza v. Raycraft*, No. 4:25-CV-2183, 2025 WL 3157796, at *9 (N.D. Ohio Nov. 12, 2025); *Hernandez Torrealba v. U.S. Dep't of Homeland Sec.*, No. 1:25-CV-1621, 2025 WL 2444114, at *8–9 (N.D. Ohio Aug. 25, 2025); *Monroy Villalta v. Greene*, 794 F. Supp. 3d

528, 530 (N.D. Ohio 2025); *Espinoza*, 2025 WL 2878173, at *2; *Lopez-Campos*, 2025 WL 2496379, at *4; *Orellana v. Noem*, No. 4:25-CV-112, 2025 WL 3006763, at *2 (W.D. Ky. Oct. 27, 2025).

Finding this framework persuasive under the circumstances, the Court will apply the Ninth Circuit's test for prudential exhaustion. As the Court adjudicates these cases and controversies, it is mindful of the separation of powers doctrine at play. *See City of New York v. Slater*, 145 F.3d 568, 570 (2d Cir. 1998) (per curiam) ("In general, a party is required to exhaust its administrative remedies before seeking judicial review of an agency decision, 'in part because of concerns for separation of powers (i.e., the need to limit judicial interference in the agency process) and the need to conserve judicial resources.'" (quoting *Pavano v. Shalala*, 95 F.3d 147, 150 (2d Cir. 1996))); *Tecum Pastor v. Dir. of Detroit Field Off., U.S. Immigr. & Customs Enf't*, No. 4:25-CV-2761, ___ F. Supp. 3d ___, 2025 WL 3746495, at *3 (N.D. Ohio Dec. 24, 2025) ("Given the narrow space where a district court may exercise jurisdiction, prudential principles of exhaustion counsel that a petitioner pursue his administrative remedies to a final judgment from the Board of Immigration Appeals before seeking a writ of habeas corpus."). For the reasons set forth below, and in *Bartolon*, ___ F. Supp. 3d ___, 2025 WL 3674604, at *7-9, the Court finds that the three *Puga* factors weigh in favor of requiring Petitioner to exhaust his administrative remedies.

Beginning with the first *Puga* factor, the Court finds that the BIA's expertise makes agency consideration beneficial to generate a proper record and reach a proper decision. While an agency's interpretation of a statute "cannot bind a court," agency expertise "has

always been one of the factors which may give an Executive Branch interpretation particular power to persuade, if lacking power to control." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 402 (2024) (quotation omitted) (citing *Bureau of Alcohol, Tobacco & Firearms v. Fed. Lab. Relations Auth.*, 464 U.S. 89, 98 n.8 (1983); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). As discussed above, Petitioner challenges his detention before this Court, and the record is devoid of any appeal filed through the immigration system. "[A]ny determination regarding detention here turns on interpretation and application of the governing removal regime." *Villalta*, 794 F. Supp. 3d at 531. "In the first instance, such review should proceed before the Board of Immigration Appeals to apply its experience and expertise without judicial interference." *Id.* (quotation omitted). A "petitioner must exhaust administrative remedies before raising the constitutional claims in a habeas petition when those claims are reviewable by the BIA on appeal." *Rojas-Garcia v. Ashcroft*, 339 F.3d 814, 819 (9th Cir. 2003).

The second *Puga* factor also weighs in favor of requiring exhaustion because the Court "has concerns that relaxing the exhaustion requirement would encourage the deliberate bypass of the administrative scheme in favor of what may be perceived as a potentially more favorable and/or timely reviewing body, i.e., federal court." *Mendoza*, 2025 WL 3157796, at *10. Petitioner's apparent attempt to sidestep the BIA appeals process in favor of habeas review highlights the need for an exhaustion requirement here to protect agency authority, limit interference with agency affairs, and promote judicial efficiency. *Beharry v. Ashcroft*, 329 F.3d 51, 56 (2d Cir. 2003), *as amended* (July 24, 2003).

Finally, the Court finds that the third *Puga* factor weighs in favor of requiring

exhaustion, as administrative review of the bond denials here would allow the agency to

correct its own alleged mistakes and alleviate the need for judicial review. Petitioner does

not contest that the BIA could provide the same relief it seeks before this Court. *See Pastor*,

2025 WL 3746495, at *3 (explaining that "a constitutional challenge to detention pending

removal and entitlement to a bond hearing pending removal collapse into analysis of the

statutory and regulatory regime"). "Requiring exhaustion under these circumstances

therefore promotes the main purposes of exhaustion, i.e., it protects the BIA's authority

by allowing it the opportunity to correct its own mistakes and, further, promotes judicial

efficiency by resolving potential issues and potentially obviating the need for judicial

review." *Mendoza*, 2025 WL 3157796, at *10.

Although the *Puga* factors weigh in favor of requiring exhaustion, a court may

nevertheless waive the prudential exhaustion requirement if "administrative remedies

are inadequate or not efficacious, pursuit of administrative remedies would be a futile

gesture, irreparable injury will result, or the administrative proceedings would be void."

*Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004). In his Reply, Petitioner argues that

even if he appealed to the BIA, the appellate process would take years. (Reply, Doc. 18,

Pg. ID 156.) But, at this point, it is "speculative to make any assumptions regarding when

the BIA will resolve" a potential bond appeal by Petitioner, as "[t]here is insufficient

information before the Court at this time to demonstrate that exhaustion of Petitioner['s]

administrative remedies will be unduly prolonged." *Mendoza*, 2025 WL 3157796, at *13.

Further, even if the BIA appeals process were to create additional delay, the Court has

insufficient evidence before it to conclude that "the risk of irreparable harm to Petitioner[]
outweighs the importance of requiring exhaustion under the circumstances presented."
*Id.*

Petitioner's potential failure to timely file a notice of appeal with the BIA regarding
his bond denial is also insufficient to deem exhaustion futile, as "exhaustion may not be
achieved through a litigant's procedural default of his or her available remedies." *Laing*,
370 F.3d at 998. Moreover, waiver is inappropriate here because, if the exhaustion
requirement were waived in every case where a party failed to timely file for an
administrative appeal, then "any party could obtain judicial review of initial agency
actions simply by waiting for the administrative appeal period to run and then filing an
action in district court." *Stock W. Corp. v. Lujan*, 982 F.2d 1389, 1394 (9th Cir. 1993).

Petitioner further argues that exhaustion would be futile given the BIA's decision
in *Matter of Hurtado*, 29 I&N Dec. 216 (BIA 2025). (Reply, Doc. 18, Pg. ID 156-57.) Such
futility must be "clear and positive," as a petitioner "must show that it is certain that his
claim will be denied on appeal, not merely that he doubts that an appeal will result in a
different decision." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 419 (6th Cir. 1998)
(quotation omitted). The Court would note that a flurry of litigation has ensued since
*Matter of Hurtado*, including a class action ruling in *Bautista v. Santacruz*, No. 5:25-CV-
1873, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025). And, "even where there is a high
probability of denial of a petitioner's appeal of an Immigration Judge's bond decision,
such a probability does not weigh in favor of waiving exhaustion." *Espinoza*, 2025 WL
2878173, at *3 (quotation omitted); *see also Beharry*, 329 F.3d at 62 (explaining that merely

because an "argument would likely have failed is not tantamount to stating that it would have been futile to raise it").

Moreover, Petitioner expresses concern as to the delay that would result from requiring administrative exhaustion. (Reply, Doc. 18, Pg. ID 156.) Courts have discretion to waive the exhaustion requirement and rule on a matter when the "legal question is 'fit' for resolution and delay means hardship." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000) (citation omitted). While some courts in this circuit have chosen to waive exhaustion because of the delay caused by a potentially lengthy appeal process, such a decision remains in the Court's discretion. *See Alvarez-Lopez v. U.S. Dep't of Homeland Sec.*, No. 25-CV-13098, 2025 WL 3525956, at *2 (E.D. Mich. Dec. 9, 2025) (surveying intra-circuit split on the issue). And, the Court notes that, in many of those cases, the district courts supported their decision to waive exhaustion with both a finding of futility and undue hardship, not just the latter. By comparison, the Court finds here that Petitioner has not made a showing of futility. Absent binding precedent to the contrary, this Court therefore declines to find that the risk of delay alone warrants a waiver of exhaustion.

## CONCLUSION

For the foregoing reasons, the Court declines to review Petitioner's detention-based claims due to failure to exhaust. Accordingly, the Court **ORDERS** the following:

1) The Petition for Writ of Habeas Corpus (Doc. 1) is **DISMISSED WITHOUT PREJUDICE**;

16

2)  Respondent Richard K. Jones' Motion to Dismiss for Failure to State a Claim (Doc.

    12) is **DENIED AS MOOT**; and

3)  This matter is **TERMINATED** from the Court's docket.

    **IT IS SO ORDERED.**

                                        UNITED STATES DISTRICT COURT
                                        SOUTHERN DISTRICT OF OHIO

                                        By: _____
                                        JUDGE MATTHEW W. McFARLAND